BOWERS et al. v. REMINGTON RAND, Inc.

No. 383.

District Court, S. D. Illinois, S. D.

Jan. 3, 1946.

Londrigan & Londrigan, of Springfield, Ill., Leland Simkins, of Mt. Pulaski, Ill., and Coyle & Martin, of Springfield, Ill., for plaintiffs.

Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill., for defendant.

BRIGGLE, District Judge.

The Court adopts the following as its Findings of Fact on the evidence and pleadings in the above entitled cause:

1. The plaintiffs [1] in this suit are fifty-five of the firemen in a fire department maintained by the defendant company, Remington Rand, Inc., in its operations of the Sangamon Ordnance Plant at Illiopolis, Illinois, where it was engaged in the loading and assembling of ammunition for the United States Army in which explosive material was used.

2. The Sangamon Ordnance Plant began its operations under the management of the defendant company about April 1, 1942, and until February 7, 1944, the fire department was operated on a three-shift basis, each shift of firemen working eight hours each for six days in each week. The plant required continuous fire protection for twenty-four hours per day during its operation.

3. About July, 1943, the defendant company gave consideration to the adoption of a two platoon system for its fire department; during October of 1943, defendant's Exhibit 1 in the record was submitted to the firemen employed in the fire department for the purpose of obtaining their approval or disapproval thereof. Upon the inauguration of the two platoon system on February 7, 1944, all of the plaintiffs employed under the two platoon system had approved the change in the terms of their employment by signing a like document to

---

[1] The term "plaintiffs" as used herein, includes the intervening parties plaintiff in this suit.

defendant's Exhibit 1, except three of the plaintiffs who at that time nevertheless requested employment under the two platoon system, and except fifteen other plaintiffs who were subsequently employed as firemen by the defendant company under the two platoon system. Those firemen who made any criticism of the proposed two platoon system were offered other employment by the defendant.

4. Defendant's Exhibit 1 sets forth the terms of employment of firemen under the two platoon system as follows:

"To Employees in the Fire Department of Sangamon Ordnance Plant:

"The Company proposes, if and when approval is obtained from the United States Department of Labor, to institute a two platoon system in the Fire Department in place of the present three shift system. The plan for the two platoon system is as follows:

"Two Platoon System Plan For Fire Department

"1. The regularly scheduled shift consists of 24 consecutive hours. Each employee is granted a rest period of 8 consecutive hours during each shift and is on duty the remaining 16 hours. Employees are given 24 consecutive hours off between shifts.

"2. During the entire shift employees must remain within the plant area where sleeping facilities are provided for their use during rest periods.

"3. Employees in the job classification of 'Fireman' are paid only for the hours they are on duty on a shift (including reasonable time for meals during their 16 hour tour of duty) and are paid one and one-half times their basic hourly rate for all time they are on duty in excess of 40 hours in one work week. If, during any shift, an employee is required, due to an emergency, to be on duty during all or any part of his regularly scheduled rest period, he is compensated for such time at one and one-half times his basic hourly rate.

"4. Salary employees receive the same rate each week regardless of shifts or hours worked.

"Upon the institution of the two platoon system, the basic hourly rate of employees in the job classification of 'Fireman' will be 76¢ per hour. At this rate employees will receive an average of $48.64 for a regularly scheduled work week as distinguished from $45.20 now received for a regularly scheduled work week.

"The Company believes this plan to be preferable to the present three shift operation and understands that many employees in the Fire Department favor its adoption. After reading the above plan, if you agree that it should be put into effect, please write your name and badge number at the bottom of this notice and give it to your immediate supervisor.

"Remington Rand Inc.
"V. E. Logan
"Assistant General Manager

"I approve and consent to the institution of said Two Platoon System Plan.
"Name ——————— Badge No. ————
"Date —————."

5. The actual practice under the two platoon system during the period involved in this suit, with respect to the employment of the fireman, was as follows:

(a) Shifts of 24 hours each, followed by a 24-hour period off duty;

(b) The firemen were required to remain in the nearby vicinity of their respective fire stations for 24-hour periods, each fireman normally working seven such shifts in each two weeks of employment, that is, three such shifts in one week and four in the other;

(c) Each 24-hour shift was divided into three shifts of eight hours each, the first, hereinafter called the "working shift", from 8:30 a. m. to 4:30 p. m.; the second, hereinafter called the "on call shift", from 4:30 p. m. to 12:30 a. m.; and the third, hereinafter called the "sleeping shift", from 12:30 a. m. to 8:30 a. m.;

(d) Except for emergency calls the routine duties for the firemen were carried on during the "working shift", that is, duties embracing the cleaning of the equipment, the cleaning of the fire stations, the cleaning of the sleeping and living quarters, inspections, special assignments, instructions, drilling, and practice runs. The regular routine work called for not more than seven hours of working time in any one 24-hour shift, including such time as was required by the men for storing their bedding each morning and removing their personal clothing and equipment from the fire fighting apparatus in preparation for the

new force reporting for work at the close of the shift; the morning work was normally completed by 11 a. m. when the firemen returned to their living quarters and had at least an hour for their lunch period. Men on special assignment might report in later, but all had ample time for lunch. During this, the "working shift" the men when not working were permitted to sleep, except during the period September 26, 1944, to October 2, 1944, and it does not appear that any of the plaintiffs performed telephone duty during this short period of time.

(e) The "on call shift", except for occasional practice runs and some special assignment to firemen to keep grass fires under observation, was the shift during which the men had their heavy meal, and they were during this period permitted to occupy their time reading, playing games, listening to the radio, and other recreational activities, and sleeping. There was no restriction on the men retiring whenever they desired on this, the "on call shift";

(f) Except for the man on telephone watch, a routine assignment, the "sleeping shift" was a period for the men to obtain their normal rest, all of the men customarily retiring before 12 o'clock midnight. While the normal period for each man to take his rest was during the "sleeping shift", there were, however, minor exceptions to this, but each man was entitled to eight consecutive hours for sleeping.

(g) A telephone watch was maintained as a routine duty for the firemen during the whole of each 24-hour shift. For the period February 7, 1944, when the two platoon system was inaugurated, until October 2, 1944, the men at each station were permitted to divide the third shift telephone watch according to their own desires by arrangement between themselves and their station captain. Thus, at one station an 8-hour watch was assigned by rotation, requiring each fireman to stand this watch approximately once each month; at the other two stations the hours for this watch varied from time to time. Thus, at times it was a 1-hour watch, again a 2-hour watch, and again a 4-hour watch;

(h) The captain of each station was required to keep and report to management the assignments to the telephone watch on the third shift at each of the three fire stations and for each 24-hour shift, but until October 2, 1944, the station captain was not required to assign a specific 8-hour rest period for the man who stood this telephone watch. No specific instruction, other than defendant's Exhibit 1, was given directly to the men that they were entitled to make up time spent on the third shift telephone watch by taking another available 8-hour period for the purpose of rest until October 2, 1944, when the captains were directed to establish this watch on an 8-hour basis and to assign to the man on the watch an equivalent consecutive eight hours for sleep during the sixteen hours preceding the beginning of his watch;

(i) It does not appear that any plaintiff in this case who stood a telephone watch on any day on the "sleeping shift" after the inauguration of the two platoon system on February 7, 1944, failed to take, or was prevented from taking, free from all other duties, a consecutive period of eight hours for sleeping at some time during the preceding sixteen hours;

(j) The firemen were paid at the rate of 76 cents per hour for the first two 8-hour shifts (16 hours), with time and a half for all hours worked over 40 in any work week; time spent on emergency calls during the "sleeping shift" was paid for at the rate of time and one half irrespective of the length of the work week. Such emergency calls disrupting the regular rest period were few, totaling for all of the plaintiffs 105.2 hours out of a total of 78,655.4 hours, or roughly, one hour out of each 700 hours of sleeping time, for the period February 7, 1944, to and including August 25, 1945; that during the period February 7, 1944, to August 25, 1945, of the fifty-five plaintiffs, eleven answered no emergency calls, ten were employed on emergency calls less than one hour, thirteen were employed on such calls less than two hours, thirteen were so employed less than three hours, three less than five hours, four less than seven hours, and one served 10.2 hours on such emergency calls;

(k) Living conditions provided for the plaintiffs by the defendant company, including cooking facilities and utensils, bathing and toilet facilities, sleeping accommodations with beds, bedding and laundry service for the same, were suitable and made reasonable provision for the requirements of the plaintiffs in this respect;

(l) In actual practice those in charge of the fire department, namely the captains and the fire chief, were liberal in excusing absences on the part of the plaintiffs at any time, and this policy was un-

restricted by the management until May 18, 1945, when a bulletin of instructions was published to all firemen, informing them that absenteeism on the third shift would be permitted only in the emergency of sickness or death in the family, the reason for this change in policy being the necessity of maintaining a more complete complement of firemen at each fire station during the "sleeping shift";

(m) The contract of employment consisted of defendant's Exhibit 1, together with the acceptance thereof by plaintiffs either in writing or by their conduct, together with such minor modifications from time to time as were mutually agreed upon, whether expressly or by implication. The defendant complied in full with the terms of this contract of employment with the plaintiffs and each of them;

(n) Defendant's Exhibit No. 1 set forth the general terms of the contract of employment between the plaintiffs and the defendant for the operation of its Fire Department under the two platoon system, and in its actual detailed operation of such system during the period in controversy in this suit the evidence discloses no variations in substance from the plans set forth in defendant's Exhibit No. 1 which would support a finding that the defendant in such operations failed to comply with the provisions of its contract of employment with the plaintiffs, or a finding that the contract of employment between the defendant and the plaintiffs was other than as set forth in said defendant's Exhibit No. 1;

(o) That in its actual operations of the two platoon system during the period in controversy in this suit, the defendant did not, nor did any of its officers or agents having supervisory control over the operations of the Fire Department and over the plaintiffs in this case in their employment as firemen in said Fire Department, cause or suffer or permit the plaintiffs or any one of them to be deprived of the 8-hour sleeping period or any part thereof out of each 24-hour shift without the payment of compensation therefor and without according them other suitable periods for rest and sleeping in lieu thereof, in accordance with the terms of said contract of employment;

· (p) That the plaintiffs in this case and each of them received compensation in full as provided in their respective contracts of employment, including compensation for all time spent on the third shift telephone watch, and for all time worked by them for the defendant during the period in controversy in this suit; and such compensation included overtime pay for all emergency service rendered during the sleeping shift and overtime pay for all hours worked beyond forty hours in any one work week;

(q) That in its actual operations of the two platoon system, the defendant and its officers and agents having supervisory control over the said Fire Department did not cause and did not suffer or permit the plaintiffs or any of them to be deprived of the 8-hour sleeping period provided for in the said contract of employment by reason of the manner in which the sleeping shift telephone watch was operated;

(r) The defendant did not, beginning on February 7, 1944, and during the period in controversy in this suit, employ the plaintiffs, or any or either of them, for work weeks in excess of forty hours without compensating them for such excess hours at a rate of one and one-half times the regular rate at which they were employed;

(s) That the contract of employment between the defendant and the plaintiffs and each of them, and the actual operation of its Fire Department by the defendant during all of the period of time involved in this suit, imposed no restraint on the liberty or normal pursuits of the plaintiffs during the 8-hour sleeping period, other than the requirement that the plaintiffs sleep on the premises of the defendant, subject to call for service in case of emergencies, which, in the actual operations, were of such infrequency and short duration as to be insignificant with respect to the issues in this case.

## Conclusions of Law

The Court adopts the following as its Conclusions of Law on the evidence, pleadings and Findings of Fact in this cause:

1. The Court has jurisdiction of the subject matter of this suit under the provisions of Section 41(8), of Title 28, United States Code Annotated, giving the District Courts jurisdiction of "all suits and proceedings arising under any law regulating commerce", and under the provisions of Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b).

2. That the burden of proof in this case rested upon the plaintiffs to prove by at least a preponderance of the evidence

that the defendant employed the plaintiffs, or some or either of them, for work weeks in excess of forty hours without compensating them for such excess at a rate of one and one-half times the regular rate at which they were employed, in violation of Section 7 of the Fair Labor Standards Act of 1938, Section 207, Title 29 U.S.C.A.

3. The Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., was in full force and effect during the entire period of time involved in this suit.

4. The plaintiffs in this case, as firemen employees of the defendant, came within the provisions of the Fair Labor Standards Act of 1938 and were and are entitled to the benefits provided thereby.

5. The rulings, interpretations and opinions of the Administrator of the Fair Labor Standards Act of 1938, while not controlling upon the courts by reason of their authority, constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance, and therefore, as a matter of law, the Court in this case takes judicial notice of Interpretative Bulletin No. 13 issued by the United States Department of Labor, Wage and Hour Division, Office of the Administrator, first issued in July of 1939, First Revision October, 1939, Second Revision October, 1940, and last revised in November, 1940, reflecting the administrative interpretation of the Fair Labor Standards Act of 1938, and to some extent the experience of such administration in the enforcement of said Act insofar as said bulletin appears to be applicable to the situation disclosed by the evidence in this cause.

6. Time spent by an employee in sleeping, the employee being subject to call for emergencies, may be but need not, under the provisions of the Fair Labor Standards Act of 1938, necessarily be considered as hours worked. Whether or not such sleeping time constitutes a working period depends upon the facts in each case, it being particularly important to determine the degree with which the employee is free to obtain his normal rest and the degree of interference with his normal mode of living and his freedom of action; where it may be said that the only interference of substance with the employee's normal mode of living and his freedom of action is that he is required to sleep away from his home, the period for sleep should not be considered as hours worked. However, should the requirement that the employee sleep on the employer's premises because of substantial interruptions in his period of rest, deprive him of a normal period of consecutive hours for sleep, then such period of time should be considered as time spent by the employee in the employ of the employer, or as working time, under the provisions of Section 3 of the Fair Labor Standards Act of 1938, Section 203, Title 29 U.S.C.A.

7. When an employer and employee have freely entered into a contract of employment, under the terms of which the employee will receive full, fair and adequate compensation for all time spent by him in the service of the employer, including overtime pay as provided for in the Fair Labor Standards Act of 1938, and such contract includes an agreement on the part of the employee to sleep on the premises of the employer subject to call, the contract is not necessarily in violation of the Fair Labor Standards Act because no provision is made for the payment of compensation to the employee for the time spent by him in sleeping. If the employee receives a normal period of time for uninterrupted sleep, which is rarely interrupted, and the contract provides payment for the time devoted to the employer because of such interruptions, and the employer has provided adequate and comfortable sleeping accommodations reasonably comparable to those found in the average home, the employee is doing that which he would normally do if he were not in the employ of the employer, and such sleeping time is time spent predominantly for the employee's own benefit and such time need not be considered as time worked, under the provisions of the Fair Labor Standards Act of 1938, unless other circumstances in the case so affect the situation with respect to the interference with the liberty of the employee as to indicate that the time so spent is predominantly for the benefit of the employer.

8. The plaintiffs in this case, and each of them, under their contract of employment, and under the two platoon system as operated at the defendant's plant, enjoyed at all times during their employment normal periods for sleep, had ample time in which to eat their meals, and a reasonable period of time for relaxation and entirely private pursuits, had reasonable

accommodations for sleeping, and adequate facilities for personal pursuits during substantial periods of enforced idleness; interruptions in the sleeping period because of emergency calls were rare and insignificant; changes in the period devoted to sleep by reason of the·periodical duty of standing the telephone shift were,not such as to unreasonably change the routine habits of the employees; the compensation paid to the employees was fair and adequate, including pay for all time except the eight-hour sleeping period; and the contract of employment was freely entered into, both the defendant and the plaintiffs believing it to conflict in no way with the provisions of the Fair Labor Standards Act of 1938; no other circumstances appear from the evidence which tended to otherwise restrict the personal liberty of the employees during the eight-hour sleeping period. In this situation the eight-hour sleeping period was not time worked or time spent by the plaintiffs in the employ of the defendant employer under the provisions of Section 3 of the, Fair Labor Standards Act of 1938, or the regulations issued pursuant thereto, nor was such contract of employment with respect to the hours spent in the service of the employer and the compensation paid for the same contrary in any respect to the spirit of the "Congressional finding and declaration of policy" contained in said Act. Section 2.

9. The plaintiffs during the entire period involved in this suit, and each of them, received full and adequate compensation for all time spent by them in the employ of the defendant in accordance with the terms of their contract of employment, the provisions of the Fair Labor Standards Act of 1938, and the provisions of the regulations issued pursuant thereto.

10. The plaintiffs in this suit during. the entire period involved therein, and each of them, received full and adequate compensation for all time spent in the employ of the defendant and devoted to the telephone watch during the third eight-hour or "sleeping shift", and such compensation was paid to said plaintiffs in accordance with their contract of employment, and in accordance with the provisions of the Fair Labor Standards Act of 1938 and the regulations issued pursuant thereto.

11. Under the contract of employment involved in this suit the defendant did not in any manner violate the provisions of the Fair Labor Standards Act of 1938 with respect to the hours of service rendered to the defendant by such plaintiffs or the compensation paid by said defendant to said plaintiffs for such service.

12. That in its actual operations of the two platoon system, the defendant and its officers and agents having supervisory control over the said fire department did not cause and did not suffer or permit the plaintiffs or any of them to be deprived of the eight-hour sleeping period provided for in the said contract of employment by reason of the manner in which the sleeping shift telephone watch was operated, in violation of Section 7 of the Fair Labor Standards Act of 1938, Section 207, Title 29 U.S.C.A., or of the regulations issued pursuant thereto.

13. That under the contract of employment between defendant and plaintiffs, the eight-hour sleeping period did not constitute working time. by virtue of any of the provisions of the Fair Labor Standards Act of 1938, or the regulations issued pursuant thereto, or any controlling judicial interpretation thereof.·

14. That the plaintiffs herein collectively and each of them individually, as a matter of law have failed to sustain the burden of proof as cast upon them in this cause by the law as set forth in Paragraph 2 of these Conclusions.

15. That the defendant is not indebted to the plaintiffs or any or either of them in any sum of money whatsoever because of unpaid compensation or liquidated damages or attorneys' fees due to such plaintiffs from the defendant under and by virtue of the provisions of the, Fair Labor Standards Act of 1938 or of the regulations issued pursuant thereto.

16. The Court finds the issues herein for the defendant and against the plaintiffs and each of them individually, and the Clerk is directed to enter judgment herein to that effect.