### EUSTICE v. FEDERAL CARTRIDGE CORPORATION.
#### Civ. No. 843.

District Court, D. Minnesota,
Third Division.
June 13, 1946.

Daniel S. Feidt, of Minneapolis, Minn. (Dwain M. Ewing and Fred A. Ossanna, both of Minneapolis, Minn., on the brief), for plaintiff.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., and Henry F. Simons, of Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff commenced this action in behalf of himself and some 59 other persons similarly situated, to recover from defendant unpaid wages, overtime compensation, liquidated damages, and attorneys' fees, under the provisions of the Fair Labor Standards Act of 1938. 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. Plaintiff and said persons similarly situated will be referred to hereinafter as "plaintiffs" for convenience.

Plaintiffs claim there is due them as "unpaid wages and overtime" the aggregate sum of $140,157, and to this they ask that a like sum be added as liquidated damages, together with costs and a reasonable attorneys' fee.

Defendant's answer puts in issue all the allegations of the complaint. The case was submitted to the Court on an agreed statement of facts and oral testimony. By stipulation of counsel, the only issue for decision in the case at bar at this time is this: What hours, if any, were hours worked by plaintiffs within the meaning of the Act, and for which plaintiffs were not compensated as provided by the Act?

Plaintiffs were employed by defendant in its fire department (privately owned and operated) at the Twin Cities Ordnance Plant at or near New Brighton, Minnesota.

Defendant, a Minnesota corporation, was engaged, during all times herein, in manufacturing small arms ammunition at said plant. Production commenced there on March 9, 1942, and from that time on it is undisputed that the parties to this preeeeding were engaged in interstate commerce, or in the production of goods for interstate commerce, and were subject to and entitled to the benefits and protection of said Act.

The Twin Cities Ordnance Plant comprised an area of 2,425 acres, lying north of the cities of St. Paul and Minneapolis. As a part of defendant's plant and operations connected therewith it maintained a fire-fighting unit or department, made up of two fire stations and a personnel of approximately one hundred fire-fighters, all of which was manned and equipped in the same manner as the ordinary municipally-operated fire department.

Defendant operated said plant as a cost-plus-a-fixed-fee contractor with the United States government, manufacturing ordnance for the United States Army, and in this process large amounts of high explosive powder were used.

Prior to March 19, 1944, plaintiffs worked for defendant in shifts of eight hours or more per day, forty-eight or more hours per week, and defendant maintained said fire-fighting service and facilities twenty-four hours per day, seven days per week, employing three alternate shifts per day of approximately eight hours each.

Commencing March 19, 1944, a two-platoon system was established at defendant's plant, and from the last-named date on, plaintiffs worked for and were paid by defendant on that basis.

The nearest well-equipped fire unit was at the nearby city of Minneapolis, sufficiently remote to warrant the maintaining of the two fire stations on the premises of defendant at New Brighton. Station No. 1 was of brick construction, and Station No. 2 was constructed of wood. Sleeping quarters for firemen, of the dormitory type, were provided by defendant in each of the stations.

By petition dated July 7, 1943, ninety-two members of defendant's fire department (among whom were forty-five of the present plaintiffs) requested the installation "of the so-called two-platoon system". The plan was submitted to the United States Department of Labor, and defendant was told by the Acting Regional Director in a letter dated August 31, 1943, that defendant's proposal was "a 'reasonable computation of working hours' within the meaning of section 7 of * * * Interpretative Bulletin Number 13 * * *".

The employees affected were represented by Federal Labor Union No. 23328, A.F. of L., and on January 11, 1944, entered into a contract with defendant governing proposed hours of employment, rates of pay and working conditions, and which, among other things, provided:

"Section 1. This article covers Fire Captains, Lieutenants, Fire Motor Operators, and Firemen.

"Section 2. Under a two-platoon system, Fire Captains, Lieutenants, Fire Motor Operators and Firemen will be stationed at the fire stations for intervals of twenty-four (24) consecutive hours during 'on station' periods, beginning at the same time as production or officer workers. The 'on duty' hours worked will be sixteen (16) hours out of the twenty-four (24) hour period.

"Section 4. During the 'on station' period, Lieutenants, Fire Motor Operators and Firemen will not be paid unless called to 'duty'. If called to 'duty' during the 'on station' period, they will be paid time and one-half for all hours in excess of forty (40) hours per week.

"Section 5. Fire Captains, Lieutenants, Fire Motor Operators, and Firemen will be alternately 'on station' twenty-four (24) hours and off twenty-four (24) hours. However, the days off on each platoon will be scheduled that each member will work three (3) sixteen-hour 'on duty' periods each week."

Three of the plaintiffs to this action signed for the employees, and one William F. Wright signed for the Union.

Following the execution of the last-named contract, and on February 11, 1944, Honorable William R. McComb, Deputy Administrator, by letter advised Lieutenant Colonel William J. Brennan, Jr., Chief,

Labor Section, Office of the Chief of Ordnance, War Department, that he had examined the proposed plan of the two-platoon system and approved it, saying: "The operation of this plan appears to be unobjectionable under the Fair Labor Standards Act, and you may so advise the contractor-operator."

The two-platoon system had been in vogue in nearby municipalities for years prior to its adoption here. It is conceded that it improved the morale and eliminated possibility of suspension of members of the fire unit. All of the employees connected with defendant's fire department voted in favor of the change to the two-platoon system and complied with it in all respects without complaint, up to the time of the commencement of this action.

Under the two-platoon system the plaintiffs normally worked three sixteen-hour *on duty* shifts, and three eight-hour *on call* shifts, each week. For the three sixteen-hour shifts they were paid straight time for all hours up to forty, and time and one-half for all hours over forty hours per week. Captains and Assistant Fire Chiefs were not included, however, as they were paid weekly salaries regardless of hours worked. With a thought to keeping the time worked so as not to exceed forty-eight hours per week, the fire department employees were given three consecutive days off every second week. Except when expressly permitted to be off the premises the plaintiffs were required to remain in and about the fire stations, on inspection of different parts of the plant or within call, at all times.

Plaintiffs were required to punch the time clock at 7:48 a.m. and to answer roll call at 7:55 a.m., and to remain on the premises continuously for a twenty-four hour period. This gave defendant a like period of fire protection, added efficiency, and required less personnel. It is undisputed that defendant operated its plant on a twenty-four hour day, made up on a three-shift basis, and that under the two-platoon system plaintiffs furnished defendant's plant with fire protection on a twenty-four hour day basis.

The sixteen-hour, on-duty shifts were spent in the performance of different tasks in and about the fire station, and in activities of plaintiffs' own choosing, restricted, however, to the premises. It is undisputed that less than half of the time from 7:55 a.m. to 9:55 p.m. was devoted to active duty. The balance of the time, made up of inactive hours, could be spent by plaintiffs in reading, playing cards, engaging in games of volley ball, pitching horse shoes, and preparing food in the kitchen of the fire station. The active duties were made up primarily of checking equipment, making up the beds in the station dormitories, drilling, and in general clean-up work in the morning. In addition to this, at different times, two of the plaintiffs would be assigned to inspection work.

Plaintiffs received no compensation for the eight hours of sleeping time, unless called to attend a fire, perform ambulance service, or serve as relief dispatcher. These "on call" hours were from midnight until 8:00 a.m., and were not remunerated for as hours worked unless plaintiffs actually performed work between midnight and 8:00 a.m. on emergency calls or as relief dispatchers. They were paid for such extra work.

During the eight "on call" sleeping hours spent by plaintiffs in the fire stations, the only duty required of them was to be present and available to answer fire calls. If a fire call did come in plaintiffs had no choice but to respond if the particular rig to which they were assigned was dispatched. In other words, if their truck was dispatched, plaintiffs were required to answer the fire alarm. If their truck was not dispatched, the only work plaintiffs would have to do would be to close the doors, whereupon they would retire to their beds and be in readiness to respond to the next alarm. No compensation was paid the plaintiffs who got up, dressed and reported for action, unless their truck was dispatched to the fire and they actually accompanied it, or the ambulance.

Plaintiffs contend they should recover overtime for (a) the eight "on call" sleeping hours between midnight and 8:00 a.m.,

and (b) the time devoted to answering roll call before the start of each shift.

It is conceded that the present case is covered by the Fair Labor Standards Act of 1938. Plaintiffs claim that the eight hours "sleeping time" in defendant's fire stations was essential to the protection of defendant's plant and hence was "time worked" for which they should be compensated, chiefly for the reason that the eight hours sleeping time was interrupted and disturbed to such an extent that they were deprived of rest and relaxation.

 Decisions of other courts, while helpful, cannot be relied upon as proof-positive yard sticks in attempting to evaluate the facts of the present case, or in applying the law here applicable. This is emphasized by the Court in Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 164, 89 L.Ed. 124, in words pertinent, pungent and epigrammatic, i.e.: "Each case must stand on its own facts."

 It is my opinion that the eight hours between midnight and 8:00 a.m., which plaintiffs were required to spend as "sleeping time" in defendant's fire station dormitories, did not constitute "time worked" within the purview of the Fair Labor Standards Act, except on those occasions when plaintiffs responded to fire alarms or ambulance duty, and were actually dispatched and required to perform such work. Plaintiffs who accompanied rigs, trucks or an ambulance on such duty between the hours of midnight and 8:00 a.m. should, in my opinion, receive compensation for the full eight hours, as there would be no continuity of sleeping time spent by them in that period. A minimum of one-half hour overtime should also be paid those plaintiffs who, during said "sleeping time" and upon the occasions of such fire alarms or calls, arose from their beds, prepared to respond to such calls to duty if needed, and were only required to open and close the fire station doors for the vehicles dispatched in response to the call. This may appear trivial, and perhaps was infrequent, but nevertheless constitutes "time worked" by plaintiffs, during the period of time that they normally could have been sleeping.

While not at all controlling, the facts leading to and surrounding the creation of the two-platoon system in the present case may be worth while adverting to. In the first place, some forty-five of the sixty plaintiffs petitioned defendant "for the installation * * * of the so-called two-platoon system". Following this, plaintiffs' part-time bargaining agent, Federal Labor Union No. 23328, A. F. of L., entered into an agreement with defendant providing, among other things, that plaintiffs' " 'on duty' hours worked will be sixteen (16) hours out of the twenty-four (24) hour period. * * * Lieutenants, Fire Motor Operators and Firemen will not be paid unless called to 'duty'. * * * each member will work three (3) sixteen hour 'on duty' periods each week".

 While it is true that plaintiffs are not bound by said petition and agreement in any manner, if inconsistent with the terms and requirements of the Act (Martino v. Michigan Window Cleaning Co., 66 S.Ct. 379; D. A. Schulte, Inc., v. Gangi, 66 S.Ct. 925; Johnson et al. v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 120), the conduct here exemplified suggests a course of action on the part of plaintiffs on those occasions in keeping with the conclusion reached by the Court in the present case.

In the case of Johnson et al. v. Dierks Lumber & Coal Co., supra, Judge Kimbrough Stone, in a concurring opinion, suggests a desirable compass for cases such as the one at bar. Judge Stone said: "My view is that the time when these plaintiffs could be sleeping is not to be treated as hours of employment *in the factual situation shown in this present record*. I do not mean that, in every case nor under all circumstances, sleeping hours should be excluded from employment hours. Whether they should or not must depend upon the factual situation of each case as it appears. That such hours may be excluded under certain fact situations is not a novel idea (see Muldowney v. Seaberg Elevator Co., D.C., 39 F.Supp. 275, 282, and Interpretative Bulletin No. 13, Department of Labor, Wage and Hour Division, paragraphs, 1, 2, 6 and 7). Nor do I mean to exclude the time when plaintiffs might be aroused at

night to care for the property. I cover solely the time when they were or could have been sleeping at night."

The Court in the instant case followed the course channeled by the opinions of Mr. Justice Jackson in the cases of Armour & Co. v. Wantock et al., 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, and Skidmore v. Swift & Co., supra.

In Muldowney v. Seaberg Elevator Co., Inc., 39 F.Supp. 275, the District Court of the Eastern District of New York, confronted with "sleeping time" in a situation not unlike the principle we are here dealing with, said, on page 282 of 39 F.Supp.: "In computing the hours of overtime I will be guided by Interpretative Bulletin No. 13, Paragraphs 6 and 7, United States Department of Labor Wage and Hour Division, Office of Administrator, November, 1940, from which it is clearly apparent that where the employee stays at the employer's place of business at night, as in the case at bar, and in the ordinary course of events has a normal night's sleep, and ample time for meals, and time for relaxation, and entirely private pursuits, such time must be excluded as this seems to me to be clearly the intent of the law."

In the case of Bridgeman et al. v. Ford, Bacon & Davis, Inc., 64 F.Supp. 1006, decided February 25, 1946, by the District Court, Eastern District of Arkansas, Western Division, and very similar to the case at bar, the Court held that "sleeping time" was not compensable under the Act, saying, on page 1010 of 64 F.Supp.:

"On the main issue in this case, namely, whether the plaintiffs are entitled to recover for the entire eight-hour rest period provided for under the two platoon system, their contention, as we understand it, is two-fold: First, that since it is admitted that the men were required to remain at their fire stations and away from their homes during the entire rest period, as a protection to the plant, they were at all times 'employed' within the meaning of the statute, and are entitled to recover as a matter of law; and secondly, if such is not the law, that they are still entitled to recover on the facts, which they insist disclose that the rest period was interrupted

to such an extent as to deprive them of the enjoyment thereof and of a normal night's sleep.

"We cannot agree with the plaintiffs in either of these contentions."

See also Harris v. Crossett Lumber Co., D.C.W.D.Ark., 62 F.Supp. 856, 858.

Counsel for plaintiffs cite the case of Bell et al. v. Porter et al., 66 F.Supp. 49. This is a decision by the United States District Court for the Northern District of Illinois. In many respects it is very similar in its facts to the present case, with one important exception, i.e., the plaintiffs in that case had been subjected to considerable employer pressure, with reference to which Judge Barnes said: " * * * the firemen, before voting, were given to understand that if they wanted to retain their jobs as firemen they would be required to vote for the plan, and, if they did not vote for the plan, they would be transferred to another department in the plant or discharged."

In the present case the record is devoid of anything suggesting that the defendant adopted high pressure methods for the purpose of influencing plaintiffs to go along with it in establishing the two-platoon system.

In the case of Bowers et al. v. Remington Rand, Inc., 64 F.Supp. 620, the United States District Court for the Southern District of Illinois, under facts not unlike those in the case of Bell v. Porter, supra, arrived at a result contrary to that reached in the case last cited.

Plaintiffs in the present case place particular emphasis on the claim that the eight-hour period of "sleeping time" was interrupted to such an extent as to deprive them of a normal night's rest. It must be admitted that many of the comforts and refinements of home were lacking in the dormitories of the defendant, but one can, without too much difficulty, become adapted to such change of conditions, as do firemen employed by many municipalities.

The two-platoon system, except for the requirement that plaintiffs sleep in the dormitories at the fire stations, did not differ materially from the old system. In many ways there was an improvement over the

old, although from the standpoint of the comfort of the firemen, there was room for improvement. All of this, of course, does not affect plaintiffs' rights under the Act.

Plaintiffs' counsel rely on the cases of Armour & Co. v. Wantock, supra, and Skidmore v. Swift & Co., supra. In the Armour case, [323 U.S. 126, 65 S.Ct. 166] the respondent fire fighters " * * * were required to stay in the fire hall, to respond to any alarms, * * *. They were not * * * at liberty to leave the premises except that, by permission of the watchman, they might go to a nearby restaurant for their evening meal.

\* \* \* \* \* \*

"The District Court held that the employees in such service were covered by the Act. But it declined to go to either extreme demanded by the parties as to working time. *Usual hours for sleep and for eating it ruled would not be counted,* but the remaining hours should. * * * The Court of Appeals affirmed." (Italics supplied.)

The appellant, Armour & Company, there argued that even if the fire fighters " * * * were within the Act, *time spent in sleeping* * * * cannot be counted as working time." (Italics supplied.)

Indicative of the correctness of the conclusion reached in the present case, is the affirmance by the Supreme Court of the United States.

In the Skidmore case, supra, it appears that the Supreme Court reversed the case because the trial court had applied a theory that was not countenanced by the Act, in stating generally that time required of employees on the employer's premises devoted to "pursuing such pleasurable occupations or performing such personal chores does not constitute work." In other words, if the facts of the particular case permit, "waiting time" may well be "working time" for which the employee should be paid. No hard and fast rule of law decisive of the case at bar is available to the trial court. This is pointed out by Mr. Justice Jackson in the Skidmore opinion, 323 U.S. at page 136, 65 S.Ct. at page 163, 89 L.Ed. 124, in these words: "We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their facts as are the many situations in which employment involves waiting time."

In the present case I am of the opinion that the plaintiffs have not carried the burden required of them to establish "sleeping time" to be "time worked", within the purview of the Fair Labor Standards Act, with the exception of the occasions when plaintiffs were actually dispatched in response to calls or fire alarms, between midnight and 8 o'clock a. m. or in response to ambulance calls during the same period of time. For such service actually performed during the hours between midnight and 8 o'clock a. m. plaintiffs should be paid the overtime required by the Act, not only for the actual time devoted to such fire or ambulance calls, but for the full eight-hour period, because this deprived them of their enjoyment of an entire normal night's sleep.

Plaintiffs should also be paid minimum overtime of one-half hour for all occasions that they were aroused, between midnight and 8 o'clock a. m., and required to open and close doors for vehicles dispatched in response to fire alarms or ambulance calls.

The Court is further of the opinion that, where not already compensated, plaintiffs should be paid the overtime required by the Act, for answering roll call, acting in relief capacities, or performing similar tasks and duties necessary in connection with their employment.

Findings of Fact and Conclusions of Law may be drawn and submitted.

Exceptions are allowed all parties.