**H. W. ARIENS et al., Plaintiffs-Appellants,**

v.

**OLIN MATHIESON CHEMICAL CORPORATION, Defendant-Appellee.**

**No. 17205.**

United States Court of Appeals
Sixth Circuit.
Aug. 29, 1967.

---

1. New Mexico Statutes Annotated, 1953, § 21–1–1(51) (k), 1953 Comp., as amended May 5, 1966.

Raymond L. Sales, Louisville, Ky. (Raymond L. Sales, John Frith Stewart, Louisville, Ky., on the brief), for appellants.

Stuart A. Handmaker, Louisville, Ky. (Shelton R. Weber, Kenneth S. Handmaker, Louisville, Ky., on the brief), for appellee.

Before O'SULLIVAN, PECK and COMBS, Circuit Judges.

COMBS, Circuit Judge.

The question is whether plaintiffs-appellants, employees of Olin Mathieson Chemical Corporation, are entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.,[1] for sleeping time which they were required to spend on the employer's premises in the course of their employment.

The defendant contends that it comes within a saving clause of the Act, 29 U.S.C. § 259, which relieves an employer from liability for overtime compensation when it is shown that failure to pay for overtime was "in good faith in conformity with and in reliance on" a written interpretation or approval issued by the Administrator of the Wage and Hour Division of the Department of Labor.[2]

The defendant's good faith reliance on what it considered an interpretation or approval by the Administrator is established. The case turns on whether defendant in fact operated in conformity with the interpretation or approval.

The District Judge answered the question in the affirmative and entered judgment for defendant. We affirm.

Olin Mathieson Chemical Corporation has operated the Indiana Ammunition Plant at Charlestown, Indiana, under its own name or through a wholly owned subsidiary, Liberty Powder Defense Corporation, since 1959. The plant is oper-

---

1. 29 U.S.C. § 207(a) (1) provides: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

2. 29 U.S.C. § 259(a) in pertinent part reads as follows: "In any action or proceeding * * *, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, * * * if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of the agency of the United States specified in subsection (b) * * *."

ated under a contract with the United States Army.

The plaintiffs are thirty-six firefighter-guards employed by the defendant. Their duties include inspection of fire extinguishers, search of personnel for combustible materials, patrolling and posting streets and gates, directing traffic and fighting fires. When defendant assumed control of the plant, a three-platoon work schedule was installed for the firefighter-guard unit under which the men were required to remain on company premises for two twenty-four hour shifts and one eight hour shift each week. In a twenty-four hour shift approximately two-thirds of the platoon worked from 7:00 A.M. until 10:00 P.M.; they slept on the premises between 10:00 P.M. and 6:00 A.M., and worked the final hour of the shift between 6:00 A.M. and 7:A.M.

In order to maintain constant surveillance, the remaining one-third in each platoon slept from 2:00 P.M. until 10:00 P.M. and worked from 10:00 P.M. to 7:00 A.M. The daytime sleep period was assigned in rotation so that each man drew it every third week. Plaintiffs were not compensated for the sleep periods, except that they received overtime pay for the occasional call-out intervals which interrupted the periods. The claim here is for overtime pay for the entire sleep periods since 1959, and for liquidated damages.

When plaintiffs commenced work under this arrangement they signed a contract to be employed as firefighter-guards. They were issued, and were requested to read, a pamphlet entitled "Information for the Employees on Personnel Policy and Accident Prevention." It was stated in the pamphlet that the firefighter-guards would work a three-platoon system, and "Firefighter-Guard Forces are stationed at entrances and patrol the Plant day and night seven days a week."

Although only one of the plaintiffs testified that the work and compensation schedules were fully explained to him before he commenced work, all the men admitted they "found out" about the schedule on the first day of work. They, of course, realized they were not being compensated for the sleep periods when they received their first paycheck. Work schedules were posted. Some of the plaintiffs complained to the chief of the unit about the lack of compensation for the sleep periods but no paychecks were refused.

On September 14, 1964, during the period for which overtime is claimed, defendant entered into an agreement with the union representing plaintiffs which stated simply that "time designated as sleep time is not considered as hours worked and is not compensable."

Defendant equipped two buildings with sleeping facilities. The equipment included beds, lockers, and bathroom and kitchen facilities. The rooms were heated in winter and airconditioned in summer. However, there were some complaints about the sleeping quarters. Some of the plaintiffs complained of noises emanating from an alarm panel adjacent to one bedroom; men in the street outside during a shift change; men using lockers and a water fountain in a room adjacent to one bedroom; the ringing of telephones in one building; radios in cars parked close to the buildings; a buzzer located in one building; and a television set near one of the bedrooms. The only witness who made a statement comparing these quarters with other types of dormitory sleeping arrangements said they were "as good as sleeping facilities on a military reservation."

The Department of the Army required defendant to submit to the Department any work schedules subject to a federal statute, such as the Fair Labor Standards Act. Upon submission the schedules were cleared, through channels, with the Administrator of the Wage and Hour and Public Contracts Division of the Department of Labor. Approval of the work schedule obtained from the Department of Labor was transmitted to the defendant by the Army with a copy of the Administrator's letter enclosed.

Defendant relies on a series of communications between the Administrator and the Charlestown Plant going back to 1951, when the plant was operated by another company, to sustain its position that sleeping time is not overtime.

The issue is perhaps most clearly presented by a letter from defendant's Resident Manager dated November 20, 1959, and the reply to the Administrator dated December 22, 1959, which are as follows:

November 20, 1959

Major Raoul Valenzuela
Contracting Officer's
Representative
Indiana Arsenal
Charlestown, Indiana

Dear Major Valenzuela:

Re: Method of Payment of Firefighter-Guards Operating on a Three-Platoon System at this Installation

The following plan is submitted for transmission through channels to the Wage and Hour Administrator, U. S. Department of Labor, for approval, in accordance with CACI T–1205.2.

For orderly and safe operation, it is necessary to set the work schedule for Firefighter-Guards on a three-platoon basis, each of which will be in the plant 56 hours each week but will receive pay for 40 hours, the remaining 16 being sleeping time without compensation. During each full twenty-four hour daily period served by a single platoon, sixteen hours (from 7:00 A.M. to 10:00 P.M. and 6:00 A.M. to 7:00 A.M.) are assigned as working time and the remaining eight hours (from 10:00 P.M. to 6:00 A.M.) are assigned as sleeping time which is non-compensible. On Wednesday, all hours of the three shifts are assigned and paid for as duty time.

Employees who are called to duty in emergency during the designated eight hours sleeping time shall have such duty time counted as hours worked and paid for. Interruptions shall be timed commencing with receipt of alarm and ending with time equipment is again "in service." Time paid for under these conditions shall be at the rate of one and one-half times straight time pay and shall be computed to the nearest tenth of an hour. If the total time for interruptions during any one eight hour sleeping period exceeds three hours, then the entire eight hour period will be considered and paid as hours worked. Employees called to duty who do not leave the fire station, although ready to do so, will be paid in the same manner as those who actually leave the station.

Sample schedule for a three week period:

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|
| Weekly | | | | | | |
| C | A | B<br>C<br>A | B | C | A | B |
| A | B | C<br>A<br>B | C | A | B | C |
| B | C | A<br>B<br>C | A | B | C | A |

Sleeping quarters or rooms are furnished and sufficiently removed from the normal work activities, so that sleepers will not be disturbed. The sleeping rooms are furnished with a sufficient number of cots so that each Firefighter-Guard on duty has an individual cot; linens and blankets are included. Laundry of linens and cleaning of blankets are furnished by the Company.

An adequately equipped kitchen with necessary facilities is furnished. Ample refrigeration facilities are also furnished, as well as large and spacious dining rooms.

Adequate sanitary facilities, including showers are provided.

Approval of the above plan is requested.

Very truly yours,

LIBERTY POWDER DEFENSE CORPORATION
Original signed by
M. F. Lindsley
M. F. Lindsley, Jr.
Resident Manager

---

U. S. DEPARTMENT OF LABOR
Wage and Hour and Public Contracts Division

Office of the
Administrator        Dec. 22, 1959

Mr. N. Minkin, Assistant
Office of the Chief of Ordnance
Department of the Army
Washington 25, D. C.

Dear Mr. Minkin:

This is in reply to your letter of December 14, 1959, concerning a proposed method of counting hours worked of firefighter-guard employees under a three-platoon system contemplated by the Liberty Powder Defense Corporation, Indiana Arsenal, Charlestown, Indiana, as outlined in Mr. M. F. Lindsley's letter of November 20, 1959.

Until further notice, the company may rely on the Divisions' position regarding the computation of hours worked stated in Section 785.3(c) (2) of the enclosed Interpretative Bulletin on Hours Worked.

Very truly yours,
(s) Clarence T. Lundquist
Administrator

Enclosure

Section 785.3(c) (2) of the interpretative bulletin referred to in the reply of the Administrator is now Section 785.-22, Title 29, Chapter V, Code of Federal Regulations. It reads:

§ 785.22 DUTY OF 24 HOURS OR MORE.

(a) *General.* Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked. [Citing cases.]

(b) *Interruptions of sleep.* If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time. (See Eustice v. Federal Cartridge Corp., 66 F.Supp. 55 (D.Minn.1946))

It will be noted that in the above quoted letter from the Administrator no

specific plan is approved. The Administrator merely approved the three-platoon system, at least by implication, and said the company could rely on what is now Interpretative Bulletin § 785.22. So, we look to whether the defendant has proceeded in conformity with the bulletin.

Three requirements are spelled out: (1) agreement between the employer and employees to exclude sleeping time from hours worked; (2) adequate sleeping facilities; and (3) opportunity by the employees to enjoy an uninterrupted "night's sleep."

As to (1), we are of the opinion there was a meeting of minds resulting in a valid agreement that plaintiffs would not be paid for sleeping time. The work schedule was explained in the phamphlet given to each man before he commenced work. The men "found out" about their work schedule on their first day of duty. The work schedules were posted and plaintiffs continued throughout the time in question to accept paychecks which excluded sleeping time from hours worked. Certainly, this was sufficient to constitute an implied agreement between the parties within the meaning of the interpretative bulletin. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914 (1942); General Electric Co. v. Porter, 208 F.2d 805 (9th Cir. 1953), cert. denied, 347 U.S. 951, 74 S.Ct. 676, 98 L.Ed. 1097 (1954).

In regard to (2), adequacy of sleeping quarters, we are of the opinion they were entirely adequate to satisfy the requirements of the interpretative bulletin. Rokey v. Day & Zimmerman, Inc., 157 F.2d 734 (8th Cir. 1946), cert. denied, 330 U.S. 842, 67 S.Ct. 1082, 91 L.Ed. 1288 (1947); Bridgeman v. Ford, Bacon & Davis, 64 F.Supp. 1006 (E.D. Ark.1946), aff'd, 161 F.2d 962 (8th Cir. 1947). Actually, there is no serious contention that the quarters were not adequate.

A more difficult question is whether defendant complied with (3) in regard to sleeping periods.

Plaintiffs contend persuasively and forcefully that the only plan approved by the Administrator provided for a "night's sleep" for the employees and that this means sleep during the night; also, that the interpretative bulletin requires an opportunity for nighttime sleeping, whereas, the plan actually used by defendant required the men to sleep during daylight hours every third week—from 2:00 P.M. to 10:00 P.M.

Defendant argues that the plan submitted to the Administrator was only a "sample plan", and that any schedule which provides for a period of eight hours uninterrupted sleep during the twenty-four hour interval is sufficient compliance with the interpretative bulletin.

It is our view that the plan used by defendant was sufficient compliance with the letter of the Administrator and the interpretative bulletin. We think the term "night's sleep" as used in the context of the bulletin is merely descriptive of a normal sleeping period of eight hours; a measurement of a period of time rather than an allocation of specific hours. We have found no authority specifically construing the words "night's sleep" and none has been cited to us by counsel. The language of the bulletin must therefore be construed in light of the attending circumstances and the context in which it was used.

It is true that the words "night's sleep" are used in both subsections (a) and (b) of the bulletin. But, there is no specific requirement that the sleeping period must be after dark and before daylight. The requirement in subsection (a) is that conditions must be such that "the employee can usually enjoy an uninterrupted night's sleep", and in subsection (b) "a reasonable night's sleep." The emphasis throughout the entire bulletin, however, is on an uninterrupted eight hour sleep period rather than on whether it shall fall within daylight or darkness. In other letters from the Administrator the words "night's sleep" also appear, but again the emphasis is on the requirement of a normal or uninterrupted sleeping period of eight hours.

It seems to us that the oft quoted statement of Mr. Justice Holmes that a word is the skin of a thought, and may vary in color and text according to the circumstances, is applicable here. The thought expressed in the bulletin is that an employee shall have the opportunity to sleep eight hours out of every twenty-four. It was intended, we think, that the employer should have some latitude in fixing the time of the sleeping period.

Several cases were cited in the interpretative bulletin. In those cases the sleeping periods were provided, at least in substantial part, during the hours of darkness, and the specific question with which we are here confronted was not raised. Even so, the emphasis in those cases is on whether the sleeping time was of sufficient duration, and uninterrupted, and not whether it falls entirely within the hours of darkness.

The case closest in point is Bowers v. Remington Rand, Inc., 64 F.Supp. 620 (S.D.Ill.1946), aff'd, 159 F.2d 114 (7th Cir. 1946), cert. denied, 330 U.S. 843, 67 S.Ct. 1083, 91 L.Ed. 1288 (1947). There the employer also operated an ordnance plant for the United States Army—Illiopolis, Illinois—and used a two-platoon system with regular shifts of twenty-four consecutive hours. Each employee was granted a sleeping period of eight consecutive hours during each shift, with twenty-four hours off between shifts. Sleeping facilities were provided for employees' use during the "sleep shift" as it was there called. The "sleep shift" was from 12:30 A.M. to 8:30 A.M. Although the question of daytime versus nighttime sleeping was not in issue, it was stated in the opinion, 64 F.Supp. at page 625:

> If the employee receives a normal period of time for uninterrupted sleep, which is rarely interrupted, and the contract provides payment for the time devoted to the employer because of such interruptions, and the employer has provided adequate and comfortable sleeping accommodations reasonably comparable to those found in the average home, * * * such time need

not be considered as time worked, under the provisions of the Fair Labor Standards Act of 1938, * * *.

Since *Bowers* is cited in the interpretative bulletin, defendant had the right to look to that case and to the other cases cited in the bulletin for guidance. There is no requirement in any of those cases that sleeping time shall necessarily be in the nighttime. In fact, the clear implication is to the contrary. It follows that defendant's interpretation of the bulletin is correct and it comes within the saving clause of the Act.

The judgment of the District Court is affirmed.