### SHEPLER v. CRUCIBLE FUEL CO.

### No. 8297.

Circuit Court of Appeals, Third Circuit.

Argued July 13, 1943.

Decided Sept. 22, 1943.

Re-Argued Jan. 3, 1944.

Decided Feb. 23, 1944.

Hymen Schlesinger, of Pittsburgh, Pa., for appellants.

John C. Bane, Jr., of Pittsburgh, Pa. (Nicholas Unkovic and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for appellee.

Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Ernest N. Votaw, Regional Atty., of Philadelphia, Pa., and Morton Liftin and Frederick U. Reel, Attys., United States Department of Labor, both of Washington, D. C., for Administrator of Wage and Hour Division, U. S. Department of Labor, amicus curiae.

Before JONES and McLAUGHLIN, Circuit Judges and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge.

This was an action brought by the plaintiff Shepler for himself and on behalf of the plaintiff Rice for an amount claimed as compensation for overtime under the Fair Labor Standards Act of 1938, 29 U.S.C.A.

§ 201 et seq. The plaintiffs were watchmen over the appellee's barge and steamboat landing on the Ohio River, each working 12 hours a day with an hour off for lunch. Their employment began in the spring of 1937 and ended May 1, 1942.

Assuming, without deciding, that the Fair Labor Standards Act is applicable to the plaintiffs, we hold that their right to recover in this action is barred by their voluntary acceptance, shortly after the effective date of the Act, of a wage adjustment offered by the employer which gave them approximately the same amount of pay which they had been receiving prior to the Act, and which was based upon a method of computing their wages which complied with all the requirements of the Act.

The plaintiffs had been receiving wages on a monthly basis, Shepler at $190 and Rice at $200 per month. After the Act was passed, the Company determined to put the plaintiffs upon an hourly basis in order to comply with its provisions. It computed that on the basis of an 11 hour day for each, a base pay of 46¢ per hour for the first 40 hours for Shepler and 48.4¢ for Rice would, with overtime added for work above 40 hours a week, yield each of the plaintiffs slightly more than the $190 and the $200 which they respectively had been receiving before. This arrangement was fully explained to them by their immediate superior, who also advised them that if the arrangement was not acceptable to them the Company would add another man to the force of watchmen at the landing and reduce the plaintiffs' hours of work proportionately. The plaintiffs expressly agreed to accept the new hourly rates.

The following February was a short month and the earnings of both plaintiffs, computed on the new basis, were somewhat less than their former monthly salaries. This caused them to complain, and one of the executive officers of the Company visited them, assuring them that at the end of the year their earnings would be about the same as they would have been on the monthly basis and reiterated that if the agreement was not satisfactory the Company would be obliged to add one or two additional men, thus reducing the hours of their work and consequently their earnings. Whether the plaintiffs expressly repeated their acceptance of the new arrangement does not appear from the Court's findings, but it does appear that they continued to work on the basis on which they were being paid for over a year, until May 1942, when the operation of the landing was discontinued.

There is evidence to the effect that during this period the plaintiffs made a number of protests about the new arrangement—that it was not "correct," that it was not "according to the Wage and Hour Law," and that under the law they were entitled to a higher base rate than was allowed. The Court did not find this to be a fact, but had such a finding been made it would not have helped the plaintiffs in view of their continuance in their employment with full knowledge of the rate and method of computation of their pay.

When the Fair Labor Standards Act became effective the Company might have continued to pay the plaintiffs on a weekly basis as before without change in the method of computation. In that case the plaintiffs would have been entitled to overtime for work in excess of 40 hours per week computed upon the basis of the wages actually received each week, divided by the number of hours worked each week, in accordance with the formula approved in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. However, the Company was entirely within its rights in doing what it did, namely, offering the plaintiffs a new contract based upon an hourly basis, at a rate actually somewhat in excess of the minimum provided for by the Act, but which when calculated with normal overtime would not yield more than the amount they had been receiving on the weekly basis. This was in substance what was done and approved by the Supreme Court in Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. The plaintiffs were at liberty to refuse to accept this new arrangement. Had they done so the Company would again have been within its rights in putting another man at work on the landing and reducing the hours so that none of the employees would get any overtime. In fact in so doing they would have been furthering what the Supreme Court in the Missel case, supra, found to be one of the purposes of the Act, namely, creating new jobs by distributing the work.

But the plaintiffs, having accepted the new arrangement, are bound by their acceptance and may not now apply the formula of the Missel case to a method

and rate of payment which had been abandoned by mutual consent by both parties. This is the doctrine of the Belo case, supra. The District Judge found such express acceptance and that disposes of the plaintiffs' claim.

█ The Belo case was generally concerned with the proper construction to put upon the new arrangement which was entered into in that case. It was complicated by a guarantee of a weekly minimum—a factor which does not appear in the present case. The fact that the new contracts in the Belo case were in writing adds nothing to the principle upon which it was decided, that an adjustment which transfers employees from a weekly to an hourly basis while maintaining approximately the same total pay, may be the subject of a valid contract between the employer and his employee.

█ Adverting to the evidence of protest on the part of the plaintiff. In Williams v. Jacksonville Terminal Co., 315 U. S. 386, 62 S.Ct. 659, 86 L.Ed. 914, the Court held, we think broadly and unequivocally, that continuance in an employment under a new method of computing pay creates a new contract and that the employee's consent to the new arrangement may be found from the continuance, notwithstanding repeated protests on his part. We do not think that the distinction urged by the Wage and Hour Division to the effect that, in the Williams case, the new arrangement had to do with an accounting for the profits of the business (tips), touches the basic principle involved.

█ The claim for pay covering lunch hours cannot be sustained. The trial court found, "Although there were occasional minor discrepancies between one record and another, and occasional errors in the calculation of the amounts to be paid the two men, the defendant Fuel Company always intended to pay, and nearly always succeeded in paying to each man the correct amount due him under Ashman's formula: that is, at his regular hourly rate for the first forty hours worked in each week, and at his time-and-one-half overtime rate for all hours worked over forty hours in each week." This is, in effect, a finding that the plaintiffs received pay, in accordance with their contract, for all hours actually worked by them, the lunch hours being taken into consideration. The finding is based on competent evidence and is supported by the plaintiffs' knowledge during their employment, obtained through access to the time book, of just what hours of absence were being charged against them.

██ As to the claim for overtime pay between October 24, 1938, the effective date of the Act, and December 1, 1938, the date when the new arrangement began, there is nothing in the record before this Court, indicating that it was ever presented to or ruled upon by the trial court. "The law requires that errors, to be reviewable, must have been definitely and timely called to the attention of the trial court, in order to afford that court a fair opportunity to pass upon the matter, and correct its own errors, if any. The purpose is to require counsel, at the proper time, to call the attention of the court to the claimed error with sufficient certainty and definiteness for the court to understand clearly the precise action of the court which is attacked, or the precise action of the court which is sought to be obtained." Arkansas Bridge Co. v. Kelly-Atkinson Const. Co., 8 Cir., 282 F. 802, 804.

The petition for counsel fees is dismissed.

The judgment of the District Court is affirmed.

### Sur Rehearing.

PER CURIAM.

A rehearing was ordered and after argument the questions presented by the appeal were fully reconsidered. We are of the opinion that the order entered by this court on September 22, 1943, affirming the judgment appealed from, properly disposes of all issues raised by the record in this case for the reasons stated in the opinion filed therewith, and we see no reason to depart from the order then entered or to modify what was said in the former opinion.