996 F.2d 1211
 125 Lab.Cas. P 35,835
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
George A. HOLB; Michael E. Reynolds; Gentry D. Thames;
Bruce E. Gilliam; Mark E. Morris; Dwight D.
Charleston; Clifford M. Pollard; Jonas
O. Greene, Plaintiffs-Appellants,
v.
CITY OF BEAUFORT, Defendant-Appellee.
Michael E. REYNOLDS; Bruce E. Gilliam, Plaintiffs-Appellants,
George A. HOLB; Gentry D. Thames; Mark E. Morris; Dwight
D. Charleston; Clifford M. Pollard; Jonas O.
Greene, Plaintiffs,
v.
CITY OF BEAUFORT, Defendant-Appellee.
 Nos. 91-2068, 92-1427.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1991
Submitted: September 24, 1992
Decided: June 22, 1993
 
 Appeals from the United States District Court for the District of South Carolina, at Beaufort. C. Weston Houck, District Judge. (CA-90-387-D-2)
 Argued: Harold Fred Kuhn, Jr., Moss & Kuhn, P.A., Beaufort, South Carolina, for Appellants.
 Linda Pearce Edwards, Gignilliat, Savitz & Bettis, Columbia, South Carolina, for Appellee.
 On Brief: Stephen T. Savitz, Gignilliat, Savitz & Bettis, Columbia, South Carolina; William B. Harvey, III, Harvey & Battey, P.A., Beaufort, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WIDENER, Circuit Judge, SPROUSE, Senior Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 WIDENER, Circuit Judge:
 
 
 1
 At issue in this consolidated appeal is whether appellants, eight firefighters formerly employed by the City of Beaufort, South Carolina, impliedly agreed to the City's exclusion of sleep time and meal time from the number of compensable hours worked by the firefighters, so as to justify the City's refusal to pay them overtime wages. The firefighters brought this suit, alleging that the City violated the Fair Labor Standards Act (FLSA), 29 U.S.C.ss 207(k), by not paying the plaintiffs overtime compensation mandated under the Act. In calculating the firefighters' compensable hours, the City excluded eight hours a day for "sleep time" and two hours a day for "meal time," permitted by 29 C.F.R. §§ 553.222 and 555.223 if the firefighters expressly or impliedly agreed to the exclusions. Because we find that six of the firefighters impliedly agreed to the exclusions, we affirm the district court's grant of summary judgment against these appellants. As to Reynolds and Gilliam, whose cases proceeded to trial, we affirm the district court's grant of judgment notwithstanding the verdict in favor of the City.
 
 
 2
 * On July 1, 1985, in response to the Supreme Court's decision in Garcia v. San Antonio Metropolitan Transit Authority,[1] Beaufort's fire chief circulated to all City firefighters a memorandum indicating that tours of duty would be changed from 24 hours followed by two days off, to 24 hours and 15 minutes followed by two days off. In addition, the City would deduct eight hours' "sleep time" and two hours' "meal time." As a consequence, employees would be paid for 53 hours of work per week, even if they worked fewer hours. Only if firefighters worked over 53 hours a week would they earn overtime pay. At the time that the new work schedule was implemented, three of the appellants were firefighters employed by the City. The other five were hired thereafter.[2] On April 15, 1986, the FLSA became effective against state and local employers, including the City of Beaufort.[3] On July 3 and 10, 1986, the fire chief circulated two memoranda establishing new time-card procedures requiring the firefighters to subtract 10 hours on each time card for each tour of duty, and to write "Deduct Sleep/Meals" next to the deduction.
 
 
 3
 On February 28, 1990, after the appellants had resigned as firefighters for the City, they filed this action. They alleged that the City violated the FLSA in the first place by increasing the firefighters' tour of duty from 24 hours to 24 hours and 15 minutes. They charged that the increase was a subterfuge to avoid the FLSA's overtime requirements, which provide that an employer may deduct sleep and meal time only if the firefighters' tour of duty exceeds 24 hours. They also alleged that the sleep and meal time deductions were illegal because the plaintiffs had not either expressly or impliedly agreed to the exclusions, as required by FLSA regulations.
 
 
 4
 On August 15, 1990, the City moved for summary judgment. The district court granted the motion against firefighters George Holb, Mark Morris, Dwight Charleston, Clifford Pollard, and Jonas Greene,[4] on the grounds that they were hired after the new pay system was implemented, and they elected to continue working for the City. "Even if they voiced complaints with the system, they can be said to have impliedly agreed to the system when they continued in their employment after discovering the matters with which they claim dissatisfaction." The court also granted summary judgment against Gentry Thames, who was already employed as a firefighter when the City established the new pay system. Thames had admitted in his deposition that he did not complain about the pay system until the end of his employment, which occurred more than three-and-a-half years after the changes were effected. The court found that Thames had impliedly agreed to the new pay system, "even though he later did make complaints about it."
 
 
 5
 The district court denied the City's motion for summary judgment as to the remaining plaintiffs, Michael Reynolds and Bruce Gilliam, who were already employed by the City when the new pay system was created. It found that a factual question existed whether Reynolds and Gilliam had voiced objections to the sleep-time and meal-time deductions, and therefore whether they had impliedly agreed to the new system. Their case proceeded to trial, and the jury returned a verdict in their favor. The City, however, filed a post-trial motion for judgment notwithstanding the verdict, which the district court granted. We have consolidated the appeal of the six plaintiffs who seek reversal of the summary judgment with the appeal of Reynolds and Gilliam, who seek reversal of the judgment notwithstanding the verdict.
 
 II
 
 6
 We review the district court's grant of summary judgment de novo. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). We affirm if there is no genuine dispute as to any material fact and the City is entitled to judgment notwithstanding the verdict. Id.; Fed. R. Civ. P. 56(c). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to appellants Thames, Holb, Morris, Charleston, Pollard, and Greene. If the record taken as a whole, however, could not lead a rational trier of fact to find for the appellants, the district court's grant of summary judgment must be upheld. Miller, 906 F.2d at 974.
 
 
 7
 The FLSA requires employers to pay employees for overtime if they work over 40 hours in one week. 29 U.S.C. § 207(a). An exception allows public employers of firefighters to designate a work period of between 7 and 40 days. Id. § 207(k). In line with this provision, the City of Beaufort in July 1985 established a work period of 28 days for its firefighters. In a 28-day work period, the City must pay its firefighters for overtime only if they work over 212 hours. 29 C.F.R. § 553.230(a). It is undisputed that appellants' hours exceed 212 if sleep time (8 hours) and meal time (2 hours) are not deducted from each 24.25-hour tour of duty. All of the appellants contend they were entitled to 10 hours' pay for sleep and meal time for every completed tour of duty. The City asserts, however, that its 10-hour deduction is valid under 29 C.F.R. § 553.222 (sleep time) and § 553.223 (meal time).
 
 Section 553.222(c) provides:
 
 8
 Sleep time can be excluded from compensable hours of work ... in the case of ... firefighters who are on a tour of duty of more than 24 hours, but only if there is an expressed or implied agreement between the employer and the employees to exclude time. In the absence of such an agreement, the sleep time is compensable. In no event shall the time excluded as sleep time exceed 8 hours in a 24-hour period.
 
 Section 553.223(d) provides:
 
 9
 In the case of ... firefighters who are on a tour of duty of more than 24 hours, meal time may be excluded from compensable hours of work provided that the tests in §§ 785.19 and 785.22 of this title are met.
 
 
 10
 Section 785.19 requires that excludable meal times be bona fide-i.e., "[t]he employee must be completely relieved from duty for the purposes of eating regular meals." Id. § 785.19(a). Section 785.22 provides that "the employer and the employee may agree to exclude" meal periods. Id. § 785.22(a).
 
 
 11
 In short, for the City to take advantage of these regulations, the sleep-time provision requires that the firefighters' tour of duty exceed 24 hours, and the meal-time provision requires that the eating times be bona fide. In addition, and most important for purposes of these appeals, both the sleep-time and the meal-time regulations require that the City have the firefighters' express or implied agreement to exclude hours.
 
 
 12
 In the first place, we agree with the district court's finding that the tour of duty exceeded 24 hours: In July 1985 the City increased the firefighters' tour of duty from 24 hours to 24 hours and 15 minutes. Appellants argue that the increase, purportedly made to give the firefighters fifteen minutes to exchange information with the shift they were replacing, was a sham and a subterfuge implemented solely to escape the FLSA's overtime requirements. We are unpersuaded. Even if the City's only reason for increasing the tour of duty was the FLSA, we cannot say that this rendered the increase a sham. The United States Department of Labor, in letter rulings addressing factual situations identical to this one, has approved of increases in tours of duty to over 24 hours implemented solely to comply with the FLSA's overtime requirements. E.g., Ltr. Rul. (unnumbered) (July 6, 1988); id. (Sept. 11, 1987); id. (Apr. 24, 1986); see Bodie v. City of Columbia, 934 F.2d 561, 563 (4th Cir. 1991) (approving similar increase); see also Williams v. Jacksonville Terminal Co., 315 U.S. 386, 398 (1942) (approving employer's change in pay system prompted by FLSA); Wethington v. City of Montgomery, 935 F.2d 222, 228 (11th Cir. 1991) (same).
 
 
 13
 Second, we disagree with appellants Thames, Holb, Morris, Charleston, Pollard, and Greene that the district court erred in finding as a matter of law that there was an implied agreement[5] between the City and these appellants to exclude eight hours of sleep time and two hours of meal time for every tour of duty.
 
 
 14
 In our view, the outcome of Thames's appeal is controlled by Bodie v. City of Columbia, 934 F.2d 561 (4th Cir. 1991). In Bodie we held that the plaintiff firefighter impliedly agreed to the exclusion of sleep time from his compensable hours because he did not object until after his retirement. Id. at 568. Additionally, we emphasized that a firefighter's decision to continue his employment can be evidence that he impliedly agreed to the terms of that employment. Id. at 564-65 (citing Williams, 315 U.S. at 398; Rousseau v. Teledyne Movible Offshore, Inc., 805 F.2d 1245, 1248 (5th Cir. 1986), cert. denied, 484 U.S. 827 (1987); Ariens v. Olin Mathieson Chem. Corp., 382 F.2d 192, 197 (6th Cir. 1967); General Elec. Co. v. Porter, 208 F.2d 805, 812 (9th Cir. 1953), cert. denied, 347 U.S. 951 (1954); Shepler v. Crucible Fuel Co., 140 F.2d 371, 374 (3d Cir. 1944)). Thames, who was employed from January 1984 until March 1989, admitted in his deposition that he did not begin to complain about the exclusions until "later on in towards the end of [his] employment with the department." His situation is analogous to that of Bodie, who acquiesced in the new pay schedule for two years without voicing any complaint. Bodie, 934 F.2d at 563. Because Thames accepted his paycheck for three, if not close to four, years without protesting the exclusions, we find that he impliedly agreed to them.
 
 
 15
 The position of appellants Holb, Morris, Charleston, Pollard, and Greene is like that of the firefighters in Ariens, 382 F.2d 192, cited with approval in Bodie, 934 F.2d at 565. In Ariens the defendant company took over an ammunition plant in 1959. At that time it implemented a "three-platoon" work schedule under which plaintiffs, employee firefighter-guards, were not compensated for sleep periods. When the plaintiffs began work under the three-platoon arrangement, the company gave them pamphlets explaining the work and compensation. In addition, the work schedule was posted. All of the plaintiffs admitted finding out about the work schedule on their first day, and all realized, when they received their first paychecks, that they were not being compensated for sleeping periods. Although some of the plaintiffs complained to the unit chief about the sleep-time deduction, none refused a paycheck. Under these circumstances, the Sixth Circuit found that the plaintiffs had impliedly agreed to the noncompensation of sleeping periods. "[W]e are of the opinion that there was a meeting of the minds resulting in a valid agreement that plaintiffs would not be paid for sleeping time." Id. at 197.
 
 
 16
 Similarly, Holb, Morris, Charleston, Pollard, and Greene were hired after July 1985, when the new pay system went into effect. Even if the sleep-time and meal-time exclusions were not explained to them before they began work, they knew of them soon thereafter because they had to sign their time cards every week, and on every time card they had to deduct 10 hours for each completed tour of duty. Despite their knowledge of the exclusions, none filed a formal complaint or refused a paycheck. Admittedly, they made oral complaints to some of their supervisors. This fact, however, does not change our analysis. Critical is the fact that they accepted their firefighter positions after the disputed pay structure had been established. As was stated by another court presented with the same factual situation:
 
 
 17
 [R]equiring employees to quit their jobs or to refuse their paychecks would enable employers to unilaterally change a longstanding employment agreement even though the FLSA requires mutuality. The same concerns do not apply to employees who accept a job where a particular compensation system is already in effect. In the absence of subterfuge or misrepresentation on the part of the employer, employees cannot claim that the employer has altered the terms of their employment contract. New hires have an opportunity before accepting employment to discover the terms of employment that are material to their decisions whether to take their jobs. Failure to discuss a particular term before accepting a position indicates either that the term was not material to the decision to accept the job, or that the term, though material, was simply overlooked. Where the parties discover the oversight shortly after hire, and the employee decides to continue in his employment and to accept his paycheck, the employee's actions manifest his acceptance of the originally overlooked term, even though he expresses his objection to the term.
 
 
 18
 Harrison v. City of Clarksville, 732 F. Supp. 810, 815 (M.D. Tenn. 1990) (citations omitted) (emphasis added). We therefore conclude that the district court was correct in granting summary judgment to the City against these plaintiffs.
 
 III
 
 19
 The appeal of Reynolds and Gilliam, however, presents a different problem. They were already employed by the City when the new pay system went into effect. Thus, they are distinguishable from the newly hired appellants, who could not claim that the City unilaterally changed the terms of their employment. They are also distinguishable from Thames, who protested the exclusion only towards the end of his employment. At trial, several witnesses testified that Reynolds and Gilliam had voiced complaints to others in their shifts, to the lieutenants, to the captain, and to the chief. As a result, the chief had several meetings with all of the firefighters. Reynolds and Gilliam testified that they started complaining as early as July 1986, when the new time card procedure that required firefighters to write "Deduct Sleep/Meals" on each card was established, and Thames's testimony tended to corroborate this assertion. The protest continued through the time Gilliam and Reynolds resigned, two (Gilliam) and three (Reynolds) years after the controverted pay procedure went into effect. However, neither of them filed any formal complaint about the pay system with the City.
 
 
 20
 An employee's continuous employment is evidence of an implied agreement with the pay system of the employer. Bodie, 934 F.2d at 564 (quoting Shepler v. Crucible Fuel Co., 140 F.2d 371 (3d Cir. 1943)). There is, however, no per se rule that continued employment conclusively establishes an agreement. See Johnson v. City of Columbia, 949 F.2d 127 (4th Cir. 1991) (en banc). Rather, the evidence in each case must be examined. Our decisions have made clear that we will not approve employer actions that place the employee in a situation of economic duress, see Johnson, 949 F.2d at 131-32, but we also will not allow employees merely to grumble about the compensation scheme and then later spring a surprise attack on an employer who has tried to comply with the options that the FLSA provides. See Bodie, 934 F.2d at 564.
 
 
 21
 The facts in this case closely resemble those in Shepler v. Crucible Fuel Co., 140 F.2d 371 (3d Cir. 1943) which we followed in Bodie. In Shepler, two barge and steamship landing watchmen employed by Crucible Fuel Company brought an action under the FLSA for amounts they claimed were owed to them for overtime work. Each watchman worked twelve hour days with an hour lunch break. Shepler, 140 F.2d at 372-73. Before the effective date of the FLSA, each of the watchmen had been paid a monthly salary. After the FLSA became effective in October 1938, the company devised a new system of computing the watchmen's wages on an hourly basis. The watchmen's supervisor thoroughly explained the new system to the watchmen and told them that if they did not agree to the new system, the company would hire an additional watchman to obviate the need for excessive overtime pay. The supervisor told the watchmen that under the new system they would still receive about the same amount of wages as they had under the salary system. The watchmen expressly agreed to the new hourly-wage system. Shepler, 140 F.2d at 373.
 
 
 22
 The watchmen complained about the new system during the following February. Because February is a short month, the watchmen received smaller checks under the hourly system than they would have received under the monthly salary system. Shepler, 140 F.2d at 373. It appears that the watchmen also complained that they were not being compensated for their lunch hour. Shepler, 140 F.2d at 374. The company once again explained the system to them, this time sending one of its executive officers, and told them that if they did not accept the new system, the company would hire additional watchmen and decrease their work hours. Although the record before the Third Circuit was silent on whether the watchmen once again expressly agreed to the new system, they continued working for the company. However, the watchmen did not stop complaining: they repeatedly told the company that they did not think that the new system was "correct," that the system violated the FLSA, and that they were entitled to a higher hourly rate. Shepler, 140 F.2d at 373. The company did not hire any new watchmen, however, and the watchmen continued in their employment with the company until the landing was closed in May of 1942. Shepler, 140 F.2d at 373.
 
 
 23
 The Third Circuit noted that the wage system chosen by the Company complied with the FLSA and Supreme Court precedent. The Third Circuit also explained that the watchmen could have refused the new system. The consequences of their refusal, however, would not have been termination, but rather, the company would have hired additional watchmen to reduce the amount of overtime worked by any of the watchmen. The Third Circuit stated that the company would have been "entirely within its rights" if it had chosen that course of action. Shepler, 140 F.2d at 373.
 
 
 24
 The court found that the watchmen had agreed to the new system, once expressly, and then by continuing their employment. The Third Circuit held that the watchmen's action was barred by their agreement to the new pay system. Shepler, 140 F.2d at 373. The Shepler court dealt with the watchmen's complaints by stating that"the continuance in an employment under a new method of computing pay creates a new contract and ... the employee's consent to the new arrangement may be found from the continuance, notwithstanding repeated protests on [the employee's] part." Shepler, 140 F.2d at 374 (citing Williams v. Jacksonville Terminal Co., 315 U.S. 386 (1942)).
 
 
 25
 In this case, Reynolds and Gilliam made several informal complaints, but never initiated a formal complaint, even though they were aware of the City's grievance procedure. They cannot point to any threats made by the City; rather, they rely on subjective feelings of unease as their basis for not pursuing their complaints. Subjective unease does not equate with the economic duress faced by the plaintiffs in Johnson. Further, the City's actions in this case do not invoke the concerns we voiced in Johnson. Here, the City did not threaten the firefighters with termination; indeed, instead of threats, the City responded to the complaints by holding staff meetings to try to resolve the firefighters' concerns. Reynolds and Gilliam have not produced any evidence that their continued employment was anything other than an implicit agreement with the City about the pay system.
 
 
 26
 We review the district court's grant of judgment notwithstanding the verdict de novo. In determining whether to grant a motion for judgment notwithstanding the verdict, the district court "must consider the record as a whole and in the light most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded [jurors] in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party, the motion should be denied...." Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir. 1980); accord Mattison v. Dallas Carrier Corp., 947 F.2d 95, 100 (4th Cir. 1991) (against the clear weight of the evidence). The appellants place great weight on the fact that the jury specifically found that there had been no agreement between them and the City. However, the jury's finding was not supported by the evidence. As we have noted, supra, continued employment is evidence of an implied agreement. Here, there was overwhelming evidence of an implied agreement, as evidenced by the continued employment of Reynolds and Gilliam, even in the face of several meetings in which they were told the pay system would not be changed. Further, there simply was no evidence of coercion, threats, or duress. We are of opinion that the district court properly found that the jury's findings and verdict were not supportable. Even when construing the evidence in the light most favorable to the then plaintiffs, the verdict was contrary to the clear weight of the evidence, and we are of opinion that the district court properly entered judgment for the City.
 
 III
 
 27
 For the foregoing reasons, the judgments of the district court are affirmed in all respects.
 
 
 28
 SPROUSE, Senior Circuit Judge, concurring in part and dissenting in part:
 
 
 29
 I concur in the majority opinion insofar as it affirms the district court's grant of summary judgment to the City against George Holb, Mark Morris, Dwight Charleston, Clifford Pollard, and Jonas Greene. I respectfully dissent to that portion of the opinion affirming the judgment notwithstanding the verdict in the case of Michael Reynolds and Bruce Gilliam.
 
 
 30
 It is true that in Bodie we held the plaintiff's continuous employment to be evidence of his implied agreement with the pay system that the City of Columbia had instituted. We emphasized, however, that Bodie's continued employment was just that-evidence of an implied agreement; we created no per se rule providing that proof of continued employment establishes agreement. We held that the district court's grant of summary judgment to the city was correct in light of the evidence-not only of Bodie's continued employment, but also of his failure to complain until after he retired. Significantly, we cited with approval several cases holding that proof of contemporaneous protest made to the employer concerning its institution of a policy to exclude sleep or meal time is sufficient evidence to negate an implied agreement, despite evidence of continued employment. Bodie, 934 F.2d at 567 (citing International Ass'n of Firefighters v. Rome, 682 F. Supp. 522, 529 (N.D. Ga. 1988); Jacksonville Professional Fire Fighters Ass'n Local 2962 v. City of Jacksonville, 685 F. Supp. 513, 519-20 (E.D.N.C. 1987)). We reiterated that position in Johnson v. City of Columbia, 949 F.2d 127 (4th Cir. 1991).[1]
 
 
 31
 Critical in Reynolds and Gilliam's appeal is the procedural posture in which judgment was rendered. Verdicts were returned in their favor after a jury trial. The jury was asked whether either plaintiff had impliedly agreed to the exclusion of sleep periods or meal periods from his compensable hours of work. The jury responded "no and not willful" to each question. The court then granted the City's motion for judgment as a matter of law.[2]
 
 
 32
 There were no objections to the instructions to the jury and, in my view, under the evidentiary rules that we recognized in both Bodie and Johnson, a jury considering the uncontroverted proof of contemporaneous objections by both plaintiffs could reasonably have concluded that neither Reynolds nor Gilliam impliedly agreed to the exclusion of sleep time or meal time.
 
 
 
 *
 Judge Widener, author of the majority opinion, is indebted to Judge Sprouse for the opinion through line 2, page 12, which has been copied en haec verba from a submission by Judge Sprouse, with only two inconsequential changes
 
 
 [1]
 469 U.S. 528 (1985). Garcia overruled National League of Cities v. Usery, 426 U.S. 833 (1976), which had held that application of the FLSA did not extend to state or municipal employers
 
 
 [2]
 Appellants worked as firefighters for the City during the following periods:
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 TABLE
 
 
 [3]
 Because Garcia caused sudden potential liability for state and local employers, Congress delayed the application of the FLSA to the states until April 15, 1986
 
 
 [4]
 In addition, the court granted summary judgment against Bruce Gilliam with respect to his re-employment from November 30, 1987 to April 29, 1988. The claim pertaining to his earlier period of employment (January 9, 1984 to July 29, 1988) proceeded to trial
 
 
 [5]
 The parties agree that no express agreement existed
 
 
 [1]
 Although Johnson concerned the issue whether an express agreement existed, in demonstrating why there was not an implied agreement, we stated:
 Johnson's case is quite different from that of the plaintiff in our recent case Bodie v. City of Columbia. ... Unlike Johnson, Bodie never protested the changes imposed by the City. In fact, Bodie did not protest the City's actions until after he retired from working for the City. In contrast, Johnson formally protested the City's actions by writing a letter along with 35 other fire fighters. Thereafter, he also displayed his protest by filing this lawsuit.
 In Bodie, this Court held that there was an implied agreement between the City and Bodie based upon Bodie's continued employment, his continued receipt of pay checks, and his failure to protest the City policies. Due to the different circumstances surrounding Johnson's continued employment and that of Bodie, we find that Bodie does not control the outcome of this case.
 ....
 [The implied-agreement cases] ultimately turn on whether the employee protested the employer's actions. If the employee contemporaneously protested, the courts have found that there was no implied agreement between the parties....
 In this case, the City knew it could not rely upon implied agreements with the 36 employees (including Johnson) who protested the City's new policy because of the above case law involving contemporaneous protests by employees.
 Johnson, 949 F.2d at 130-31 (citations and footnotes omitted).
 
 
 [2]
 The amendment to Fed. R. Civ. P. 50 changed the label of a post-trial motion from "judgment notwithstanding the verdict" to "judgment as a matter of law." The amendment, which became effective on December 1, 1991, was in force on February 21, 1992, when the district court issued its ruling after Reynolds and Gilliam's trial. The amendment did not change the standard of proof. Fed. R. Civ. P. 50 advisory committee notes